IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ) | | |
| ) | Case No.: | 14-19763 |
| Ada L. Brown ) | Judge: | Jack B. Schmetterer |
| ) | Chapter: | 11 |
| Debtor(s) ) | | |
| ) | | |

# **THIRD AMENDED DISCLOSURE STATEMENT**

DISCLOSURE STATEMENT OF THE DEBTOR, ADA L. BROWN,
CHAPTER 11 PLAN OF REORGANIZATION

Dated February 2, 2015

James L. Hardemon
Legal Remedies Chartered
8525 Stony Island Avenue
Chicago, IL  60617
(773) 374-5288
Atty #1126229


William E. Jamison, Jr.
200 E Randolph St.
Suite #5100
Chicago, IL  60601
(312) 226-8500




Counsels for Ada L. Brown

* This proposed Disclosure Statement is filed with the Court pursuant to 11 U.S.C. § 1125. The Disclosure Statement has not yet been approved by the Court, and references to such approval are included to allow the Court, creditors and other interested parties to review the entire, final form of the Disclosure Statement. This proposed Disclosure Statement is not a solicitation and is subject to modification. It should not be relied upon by an entity in connection with the purchase or sale of any Claims against the Debtor.

## **DISCLAIMER**

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF DEBTOR ADA L. BROWN, CHAPTER 11 PLAN OF REORGANIZATION (THE "PLAN"),[1] A COPY OF WHICH IS ATTACHED HERETO AS EXHIBIT 1, AND THE INFORMATION CONTAINED HEREIN MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CLAIM AND INTEREST HOLDERS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NONBANKRUPTCY LAW.

---

[1] Except as otherwise provided herein, capitalized terms used herein have the meanings ascribed to them in the Plan.

## INTRODUCTION

On May 27, 2014, Ada L. Brown (the "Debtor") filed her voluntary petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy court for the Northern District of Illinois, Eastern Division (the "Court").  The case was assigned to the Honorable Jack B. Schmetterer, Bankruptcy Judge.  When the case was filed the Debtor owned and operated her own business known as "Why Not Repeats", resale shop, located at 7631South Jefferey Chicago, IL 60649.  The lease for the location of the Why Not Repeats, Resale Shop ended October 31, 2014. The debtor did not renew the lease for the location and has closed the business.  The debtor continues to manage her six unit rental property located at 1365-1367 E. 48th Street, Chicago, Illinois 60615.  The Debtor has filed a Second Amended Plan of Reorganization (the "Plan") which is dated January 4, 2015.  Pursuant to Section 1125 of the Bankruptcy Code (the "Code"), the Debtor has prepared and filed this Disclosure Statement (the "Statement") along with the Plan for the Court's approval.  Both the Plan and Statement are to be transmitted to the holders of claims or interest with respect to the Debtor and its assets upon the approval of the court for the solicitation of votes for or against the reorganization of the plan.

## PLAN OF REORGANIZATION'S TREATMENT OF CREDITORS

The Plan provides for the division of creditors into unclassified claims and three (3) classified classes.

Unclassified Claims consist of claims that are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  Administrative Expense Claims are any cost or expense of administering the Chapter 11 case allowable under §503(b) of the Bankruptcy Code.  Administrative Expense Claims will consist primarily of the fees owed to professionals whose retention was approved y the Bankruptcy Court.  Administrative Expense Claims will be paid from the retainers previously paid by Debtor or from the Post Petition earnings of the Debtor as necessary and approved by the Court.

**Class 1** consists of the Allowed Secured Claim of BankFinancial, F.S.B.  BankFinancial, F.S.B shall be paid the secured amount of its claim in the amount of $727,742.98. (the Restructured Promissory Note 1")  The Restructured Promissory Note shall be in the amount of $727,742.98, at a rate of 4% amortized over 156 months.  The Debtor will pay BankFinancial, F.S.B, on its secured claim the amount of $5,990.17 per month payable on the 15th of the month until paid in full (156 months), beginning on the month following the effective date giving credit for the amounts paid post-petition. Once BankFinancial, F.S.B secured claim has been paid in full, BankFinancial, F.S.B shall cause the security interests to be released and any other loan documents, to be cancelled and surrendered as satisfied.  BankFinancial, F.S.B secured claim is impaired under the Plan.  All reaming terms of the original note that are not inconsistent with this section remain in effect.  The debtor is to maintain all future real estate taxes and insurance independently.

**Class 2** consists of allowed priority tax claims.  It is estimated that there will be

$10,233.41 owed to the Department of Treasury-Internal revenue Service (hereinafter "the IRS") The IRS shall receive on account of its priority tax claim payment in full plus interest at 5% over a period of thirty-six months (36) in monthly payments amount of $298.47, unless IRS agrees to different treatment under the Plan.

The Claim of the Cook County Treasurers Office for Real Estate Taxes 2013 which total $4,391.22 plus 3% interest shall be paid in twelve (12) equal installments of $376.91, beginning on the effective date of the Plan. All future taxes beginning with 2014 payable in 2015 are to be paid by the Debtor directly. This claim is impaired.

**Class 3** consist of the allowed non priority unsecured claims in the total amount of $53,758.00 will be paid pro-rate 5% over a sixty month period with an estimated monthly payment of $44.79 without interest. All payments shall begin on the 1st day of the month following the effective date of the Plan.

There are presently six (6) executory contracts. These contracts are comprised of five residential leases for the property located at 1365 E. 48th Street, Chicago, IL 60616. The debtor will assume all residential leases/executory contracts consisting of the following residential leases:

| Unit | Tenant | Monthly Rental |
|---|---|---|
| 1E | Christine Hawkins | $1,650.00 |
| 3E | Alan Alston | $1,400.00 |
| 2E | Collier/Daniels | $1,500.00 |
| 1W | McElroy | $1,600.00 |
| *2W | Brown/Copeland | $1,500.00 |
| 3W | Shannon Walker | $1,195.00 |

TOTAL………………………..……..$8,845.00

\*      Unit 2W is occupied by debtor and debtor's 84 year old mother. Rent for this unit is paid by debtor's mother from sources independent of the bankruptcy estate.

The purpose of this statement is to provide the holders of claims against the Debtor with adequate information about the Debtor and about the Plan to allow holders of claims to make an informed judgment with regards to exercising their right to vote for acceptance or rejection of the Plan. Under §1126(f) of the Bankruptcy Code, holders of unimpaired claims are deemed to have accepted the plan.

Creditors may vote on the Plan by filling out and mailing the Ballot Form to the Court. Your ballot is enclosed herewith. Please complete, sign, and return your ballot immediately. As a creditor, your vote is important. The amount and number of Ballots are computed on the basis of claims actually voted for or against the Plan. In order for the Plan to be deemed accepted, creditors that hold at least two-thirds in amount and more than one-half in number of allowed claims of Class 2 that are actually voted must accept the plan. The deadline for casting a vote on the Plan is _____, 2015. In order for your ballot to be counted, it is essential that it be received by that time at the following address:

Clerk of the United States Bankruptcy Court
219 S. Dearborn Street, Seventh Floor
Chicago, IL 60604

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  CREDITORS ARE URGED TO READ THE PLAN IN FULL.  CREDITORS ARE FURTHER URGED TO CONSULT WITH COUNSEL TO FULLY UNDERSTAND THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF February 2, 2015 AND ARE BASED ON FACTS KNOWN TO THE DEBTOR AT THAT TIME, AND OF WHICH THE DEBTOR BELIVES TO BE ACCURATE..

## HISTORY OF DEBTOR

Ada Brown ("Debtor) and her mother, Mary Copeland, are co-owners and co-borrowers of a six-unit apartment building located at 1365-1367 E. 48th Street, Chicago, Illinois 60615.  Prior to filing this Chapter 11, their primary operations involved ownership and management of this six unit rental complex.  Ada Brown owned and operated a small business, "Why Nots Repeat Shop" located at 7631 S. Jeffrey, Chicago, Illinois 60649.  The business sold used consumer items on a consignment basis. The lease for the business ended on October 31, 2014.  Ms. Brown did not renew the lease and closed the business since it was no longer profitable. The items Debtor sold were on consignment hence she did not own them. They were returned to the owners. The only asset of the Debtor is the six unit building and her household furnishings which value is about $3,000.00.

The Debtor was faced with difficulties that led to its current financial state based on the following.  The Debtor got a second mortgage on the property on or about May, 2010, in order to completely rehab the property so as to command market rate rents.  After receipt of the second mortgage loan, Debtor hired a general contractor to rehab the property.  After rehabbing two of the units, the contractor failed to complete the remaining four units, leaving the Debtor with insufficient income to meet monthly expenses.  The Debtor then retained the services of a professional financial management and property management firm to development a plan to save the property.  The management firm initially evicted are below market rent, paying tenants.  One of the tenants took over 8 months to complete the eviction process.  As each tenant was evicted, their unit was completely gutted and renovated, using the rental income from the existing paying tenants.  Ultimately, between the periods of February 2013 through March 30, 2014, the renovation of the 4 units, that was not completed by the unscrupulous contractor, was completed by the Debtor under the guidance of the Management Firm.  As a result of mortgage payment arrearages, BankFinancial, F.S.B., filed a foreclosure action against the Debtor and appointed a Receiver.

## PROBLEMS LEADING TO FILING FOR REORGANIZATION

Due to the lack of funds that the Debtor had on hand as a result of the initial failed rehab project, the Debtor fell behind on her mortgage payments.  On March 4, 2014, a foreclosure

action was filed by BankFinancial, F.S.B., which ultimately led to a motion being filed to appoint a receiver for the property. After many months of trying to negotiate with the Secured creditor, and in response to the receiver being put in place, the instant Chapter 11 Bankruptcy was filed.

## CURRENT STATUS OF DEBTOR AND FUTURE PROJECTIONS

Since the petition date, Debtor has remained in possession of her property and has conducted her business as debtor in possession. While under the supervision of the Bankruptcy Court, the Debtor has maintained stringent control over cash expenditures and all operating expenses. Debtor has also remained current with all post petition mortgage payments and adequate protection payments as they have accrued. With all six units, now completely renovated, the units are able to command market rate rents in the area of approximately $1,600.00 monthly. Five of the units are currently rented and bringing sufficient income to meet the financial obligations of the Plan. With the addition of the final unit, which is now on the market, revenue will increase, and the entire building is projected to remain stable due to the high desirability of rental units in the Hyde Park area of Chicago which is anchored by the University of Chicago. The building is managed by Elite, Inc. and the Debtor. Elite, Inc. charges $250.00 per month but has agreed to accept $150.00 per month until January 2016 at which point Elite expects to resume receiving $250.00 per month management fee.

## BEST INTEREST OF THE CREDITORS

It is in the best interest of all creditors that the Debtor's Plan of Reorganization be confirmed. The Debtor's possessions consists of the six unit building itself, which is currently worth less than the senior and junior secured mortgages on the property, that if liquidated, would result in a deficiency claim against the Debtor. The Debtor, in light of BankFinancial's 1111(b) election, proposes to pay BankFinancial, F.S.B.100% percent of its secured claim amortized at 4% interest over 13 years. BankFinanical Claim in the aggregate amount of $724,741.98 is comprised of a Junior Loan that matured on January 13, 2013 and a Senior Loan that matures on June 1, 2032. By restructuring the promissory notes, BankFinancial will receive 100% of its claim at a reduced interest rate of 4% that shall be paid in full prior to the maturity date of the Senior Loan.

In the event of a conversion to Chapter 7 of the Bankruptcy Code, another level of administrative expense would be created that would be paid prior to distribution to any creditors. At the present time the administrative expenses will be limited to Debtor's attorney fees of approximately $20,000.00 plus the trustee's quarterly fees. Debtor's attorneys agree to accept payment on mutually agreeable terms with Debtor after confirmation of the Chapter 11 plan.

At the present time, if this matter was subject to liquidation, there would be no funds available for disbursement.

The Debtor's plan proposes to pay unsecured creditors 5% of their claims. The Debtor believes that if this case was converted to a Chapter 7 proceeding, the unsecured creditors would receive no distribution on their claims due to the secured claims listed above and the additional

administrative expenses that would be owed at that time. Accordingly, it is in the best interests of all creditors and parties in interest that the Debtor's Plan of Reorganization be confirmed.

## **GENERAL INFORMATION REGARDING DISCLOSURE STATEMENT**

      A.      Purpose of Disclosure Statement.

Pursuant to section 1125 of the Bankruptcy Code, the Debtor has disseminated this Disclosure Statement to all known Holders of Claims against and Interests in the Debtor. The Disclosure Statement serves the following two purposes: (i) solicitation of acceptances from those entitled to vote on the Plan; and (ii) notification of the hearing in the Bankruptcy Court on confirmation of the Plan, which is scheduled to commence on _____, 2015 at __.m. (Central time).

This Disclosure Statement is filed with respect to the Plan to describe, among other things, the treatment of the various Classes of Claims against and Interests in the Debtor under the Plan and the means for execution of the Plan. The rules of construction and definitions contained in the Bankruptcy Code and Bankruptcy Rules are applicable to this Disclosure Statement. Unless otherwise indicated, all statutory references in this Disclosure Statement shall refer to the Bankruptcy Code and Bankruptcy Rules, as applicable.

      B.      Approval of Disclosure Statement.

On _____, 2015, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical investor to make an informed judgment about the Plan. In determining whether this Disclosure Statement provides adequate information, the Bankruptcy Court considered the complexity of this case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information. Approval of this Disclosure Statement, however, did not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan. Furthermore, this Disclosure Statement is not intended to be an offering memorandum or securities prospectus and is exempt from all applicable federal and state securities laws pursuant to section 1125(e) of the Bankruptcy Code.

      C.      Dissemination of Disclosure Statement.

This Disclosure Statement has been provided to each party in interest whose Claim or Interest has been scheduled or who has filed a proof of Claim or Interest in this Case. It is intended to assist such parties in evaluating the Plan and in determining whether to accept or reject the Plan. Under the Bankruptcy Code, your vote for acceptance or rejection of the Plan may not be solicited unless you have received a copy of this Disclosure Statement prior to or concurrently with such solicitation. Each Holder of a Claim or Interest should carefully read this Disclosure Statement and the Plan in their entirety before voting on the Plan.

      D.      Sources of Information and Disclaimer.

This Disclosure Statement may not be relied upon for any purpose other than to determine whether to accept or reject the Plan. Nothing contained in this Disclosure Statement shall constitute an admission by the Debtor or any other party regarding the subject matter of the Disclosure Statement, be admissible in any proceeding (for evidentiary purposes or otherwise) involving the Debtor or any other party, or be deemed advice on the tax or other legal effects of the Plan on Claim or Interest Holders. In the event of any inconsistency between this Disclosure Statement and the Plan, the terms of the Plan shall control.

Except as otherwise expressly indicated herein, the information contained in this Disclosure Statement has been obtained from the Debtor's books and records and certain pleadings, papers and other documents filed with the Bankruptcy Court. There has been no independent audit of the financial information contained in this Disclosure Statement.

**CONFIRMATION PROCEDURES**

A.    Restrictions on Solicitation of Votes.

No information concerning the Plan or any assets or liabilities of the Debtor has been authorized by the Bankruptcy Court to be disseminated in connection with the solicitation of acceptances or rejections of the Plan other than as set forth in this Disclosure Statement. No party has been authorized to solicit acceptances or rejections of the Plan other than the Debtor as the proponent of the Plan. Any inducements to secure your acceptance or rejection of the Plan other than as contained in this Disclosure Statement should not be relied upon by Holders of Claims or Interests in voting on the Plan. Any such information or inducement should be reported immediately to the Debtor for further action as may be appropriate before the Bankruptcy Court.

B.    Classes Entitled to Vote.

There are six (3) different classes of Claims and Interests under the Plan. Holders of Claims in Classes 1, 2 and 3 are impaired under the Plan and are entitled to vote on the Plan. Pursuant to section 1123(a) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not subject to classification. As such, the Holders thereof are not entitled to vote on the Plan. The treatment of Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

C.    Voting on the Plan.

In order to vote on the Plan, Holders of Claims and Interests in Classes eligible to vote should complete the enclosed ballot and return it to the following address so that it is received on or before _____, 2015:

       Clerk of the United States Bankruptcy Court
       Northern District of Illinois, Eastern Division
       219 South Dearborn St.
       Chicago, Illinois 60604

ONLY THOSE BALLOTS RETURNED IN A TIMELY MANNER WILL BE COUNTED IN DETERMINING WHETHER A PARTICULAR CLASS OF CLAIM OR INTEREST HOLDERS HAS ACCEPTED OR REJECTED THE PLAN.

  D. Confirmation Hearing.

  Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider the confirmation of the Plan (the "Confirmation Hearing") on _____, 2015 at ___ __.m. (Central time), and it has directed that notice thereof be transmitted to all parties in interest. The Confirmation Hearing will be held before the Honorable Jack B. Schmetterer, Courtroom 682, 219 South Dearborn, Chicago, Illinois. The Bankruptcy Court has directed that objections, if any, to the confirmation of the Plan be filed and served on counsel for the Debtor on or before  _____, 2015.

  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice other than by announcement of the next adjourned date at the Confirmation Hearing or any adjourned Confirmation Hearing. At the Confirmation Hearing or any adjourned Confirmation Hearing, the Bankruptcy Court shall enter an order confirming the Plan if sufficient acceptances thereof have been received from Holders of Claims and Interests entitled to vote on the Plan and if all other statutory requirements have been satisfied.

  E. Acceptances Necessary for Confirmation.

  At the Confirmation Hearing, the Bankruptcy Court will determine, among other things, whether the Plan has been accepted by each Class that is Impaired under the Plan. Under section 1126 of the Bankruptcy Code, an Impaired Class of Claim Holders is deemed to have accepted the Plan if members of the class that hold two-thirds (2/3) in amount, and more than one-half (1/2) in number, of the Allowed Claims voting on the Plan have voted for acceptance of the Plan. An Impaired Class of Interest Holders is deemed to have accepted the Plan if members of the class holding two-thirds (2/3) in amount of the Allowed Interests voting on the Plan have voted for acceptance of the Plan.

  Unless there is unanimous acceptance of the Plan by each Holder of a Claim or Interest in an Impaired Class, the Bankruptcy Court, as an additional requirement for Confirmation, must determine that, under the Plan, the members of each such Class will receive property of a value, as of the Effective Date of the Plan, that is not less than the value that each such Class member would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

  F. Confirmation Without Necessary Acceptances.

  Even if one or more classes of Claims or Interests that are Impaired under the Plan reject the Plan, or are deemed to have rejected the Plan, the Bankruptcy Court may confirm the Plan if it finds that at least one (1) Impaired Class of Claims has voted to accept the Plan (determined without including any acceptance of the Plan by an insider) and that the Plan does not "discriminate unfairly," and is "fair and equitable" as to each Impaired Class of Claims or

Interests that has not accepted the Plan. This "cramdown" authority is contained in §§ 1129(a)(10) and 1129(b) of the Bankruptcy Code.

## **SUMMARY OF OTHER SIGNFICANT PROVISIONS OF THE PLAN**

    A.     Means for Execution of the Plan.

The Plan shall be funded from the Debtor's available cash, which will be revested in the Reorganized Debtor as of the Effective Date. Except for those restrictions expressly imposed by the Plan or by the Confirmation Order, on and after the Effective Date, the Reorganized Debtor shall operate its business and shall use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions imposed under or by virtue of the Bankruptcy Code, the Bankruptcy Rules and any other applicable rules and guidelines. Without limiting the generality of the foregoing, the Reorganized Debtor shall be free to obtain working capital financing for payment of operating expenses and for other working capital needs as they arise. The Reorganized Debtor shall have no restrictions on its ability to obtain working capital financing or other indebtedness on such terms and conditions as may be acceptable to the Reorganized Debtor.

    B.     Foreclosure Action.

Not later than seven (7) Business Days after the later of (i) entry of the Confirmation Order, the Foreclosure Action shall be dismissed.

    C.     Distribution Agent.

The Reorganized Debtor will act as the Distribution Agent for the purposes of making any and all distributions provided for under the Plan. In making distributions after the Effective Date, the Distribution Agent will reserve appropriate amounts for Disputed Claims. All distributions made pursuant to the Plan which are not negotiated within ninety (90) days after such distributions are made shall revert to and become the property of the Reorganized Debtor free and clear of any and all claims, demands and causes of action.

    D.     Disputed Claims.

No payment or Distribution will be made on account of any Claim that is subject to an objection until such time as the Disputed Claim becomes an Allowed Claim, in whole or in part, and no post-confirmation interest on such Claim shall be payable on the allowed portion, if any, with respect to a Disputed Claim except to the extent provided for in the Plan.

    E.     Retention of Litigation Claims.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Claims, including, any and all avoidance and other actions arising under chapter 5 of the Bankruptcy Code, and actions to collect the Debtor's accounts receivable shall be retained, prosecuted and enforced by the Reorganized Debtor, except to the extent released through the Plan. The Reorganized Debtor may enforce, sue on, settle or compromise any or all such Litigation Claims

or, in the exercise of its discretion, may elect to not pursue certain Litigation Claims. The Debtor is not aware of any Litigation Claims. The Debtor is not aware of any avoidance or other actions arising under chapter 5 of the Bankruptcy Code and does not anticipate that the Reorganized Debtor will pursue any such actions.

    F.      Exemption From Certain Taxes.

Pursuant to § 1146(a), the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer from the Debtor to the Reorganized Debtor or any other Person or entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

    G.      Assumption of Executory Contracts and Unexpired Leases.

The Plan provides that, as of the Effective Date, the Reorganized Debtor assumes any executory contract or unexpired lease to which the Debtor is a party, which was in existence on or before the Petition Date and which was not assumed prior to the Petition Date, except any such contract or lease (i) rejected by the Debtor or otherwise terminated prior to the Effective Date, (ii) that is the subject of an application to reject pending as of the Confirmation Date, or (iii) as to which (A) the non-Debtor party to the contract or lease has objected to the assumption of the contract or lease and (B) such objection has not been resolved between the Debtor and the non-Debtor party or by a Final Order. Each executory contract and unexpired lease assumed pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law. Within 120 days of the Effective Date, the Reorganized Debtor shall, pursuant to the provisions of §§ 365(b) and 1123(b)(2) of the Bankruptcy Code, cure all defaults existing under and pursuant to the unexpired leases and executory contracts assumed under the Plan.

    H.      Administrative Expense Claims.

All requests for the allowance and/or payment of an Administrative Claim (other than Professional Fee Claims) must be filed with the Bankruptcy Court and served on counsel for the Debtors and the Reorganized Debtor no later than thirty (30) days after the Effective Date. Unless such request is objected to, such Administrative Claims shall be deemed allowed in the amount requested. In the event that an Administrative Claim is objected to, the Bankruptcy Court shall determine the Allowed amount of the Administrative Claim.

### **RISK FACTORS TO BE CONSIDERED**

The following specific risks may exist in connection with confirmation of the Plan:

1.   Any objection to the Plan filed by a member of a Class could either prevent or delay confirmation of the Plan.

2.   In the event that certain Classes fail to meet the minimum Class vote requirements, as described above, the Debtor may request a cramdown of such non-accepting Classes. Failure to secure a cramdown or to suitably amend the Plan, if required, will in all likelihood prevent confirmation of the Plan.

3.   Section 1122(a) of the Bankruptcy Code requires that the Plan place a Claim in a particular Class only if the claim is substantially similar to the other Claims of such Class. Moreover, section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide for the same treatment for each Claim of a particular Class, unless the holder of a particular Claim agrees to a less favorable treatment of such particular Claim. The Debtor believes the Plan complies with §§ 1122(a) and 1123(a)(4) and related case law by the classification and treatment of various Claim holders in the Plan. In the event the Bankruptcy Court finds that the Plan violates §§ 1 122(a) and 1123(a)(4), and the affected creditors do not consent to the treatment afforded under the Plan, the Bankruptcy Court may deny confirmation of the Plan.

## **ACCEPTANCE AND CONFIRMATION**

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan with respect to the Debtor and the Debtor's Estate, including that: (i) the Plan has classified Claims in a permissible manner; (ii) the contents of the Plan comply with the technical requirements of Chapter 11 of the Code; (iii) the Debtor has proposed the Plan in good faith; and (iv) the Debtor's disclosures concerning the Plan have been adequate and have included information concerning all payments made or promised in connection with the Plan and the Debtor's Case, as well as the identity and affiliations of, and compensation to be paid to, all insiders. The Debtor believes that all of these conditions have been met or will be met and will seek findings of the Bankruptcy Court to this effect at the hearing on confirmation of the Plan.

The Code also requires that the Plan be accepted by the requisite votes of holders of Claims, that the Plan be feasible, and that confirmation of the Plan be in the "best interests" (absent unanimity) of the holders in each impaired class of Claims and Interests. To confirm the Plan, the Bankruptcy Court must find that all of these conditions are met. Thus, even if all classes of Claims and Interests accept the Plan by the requisite votes, the Bankruptcy Court must make independent findings respecting the Plan's feasibility and whether it is in the best interests of Holders of Claims and Interests before it may confirm the Plan. The classification, "best interests," and feasibility conditions to confirmations are discussed below.

A.   Classification of Claims.

The Bankruptcy Code requires that the Plan place each Claim or Interest in a class with other Claims or Interests which are substantially similar. The Debtor believes that the Plan satisfies the Bankruptcy Code's standards for appropriate classification.

B.      Best Interests of Impaired Classes.

Notwithstanding acceptance of the Plan by each impaired class of Claims and Interests, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the "best interests" of creditors and equity security holders. The "best interests" test requires that the Bankruptcy Court find that the Plan will provide to each member of each impaired class of Claims and Interests property of a value, as of the Effective Date of the Plan, at least equal to the amount such member would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

`To calculate what members of each impaired class of Claims and Interests would receive in the event of a liquidation, the Bankruptcy Court must first determine the aggregate dollar amount (the "Liquidation Value") that the Debtor's assets would generate if the Case was converted to a chapter 7 case under the Bankruptcy Code and the assets were liquidated by a trustee in bankruptcy. The Liquidation Value would consist of the net proceeds generated from the disposition of the Debtor's assets as augmented by the Debtor's cash.

The Liquidation Value available to Holders of General Unsecured Claims would be reduced by (i) the Allowed BankFinancial, F.S.B Secured Claims and Allowed Other Secured Claims to the extent of the value of their underlying collateral, (ii) Allowed Administrative and Priority Claims, which have a senior priority of distribution under the Bankruptcy Code, and (iii) the costs and expenses of the liquidation under chapter 7, which would include the compensation of a trustee, compensation of attorneys and other professionals retained by the trustee, and expenses incurred by the trustee in disposing of the Debtor's assets.

The Debtor believes that the Plan will produce more than a chapter 7 liquidation of its assets for several reasons including the following:

1.      A liquidation would substantially reduce the value of the Debtor's Property and accounts receivable.

2.      A chapter 7 trustee would incur substantial costs and expenses in attempting to sell the Debtor's Assets.

3.      A chapter 7 trustee would be entitled to a statutory fee of up to three percent (3%) of the amounts that the trustee disburses to creditors, including the amounts that the trustee would disburse to secured creditors such as BankFinancial, F.S.B.  In addition, a trustee customarily requires the services of an attorney and an accountant, whose fees could be substantial, and whose fees would also be paid before any distribution to unsecured creditors.

The Debtor prepared the liquidation analysis attached hereto as Exhibit "A" to reflect its estimate of likely recoveries in the event of a chapter 7 liquidation. (See attached appraisal hereto as Exhibit "B")  You should review this liquidation analysis, which sets forth the amounts that the Debtor believes would be available in the event of a chapter 7 liquidation. This analysis is based upon estimates of the Debtor's assets and liabilities as of February 2, 2015, and it incorporates other estimates and assumptions developed by the Debtor that are subject to

potentially material changes depending upon future economic and business conditions and legal rulings. Therefore, the actual liquidation value of the Debtor could vary materially from the estimates reflected in the analysis. The Debtor does not intend and undertakes no obligation to update or otherwise revise the analysis to reflect events or circumstances arising hereafter.

C.      Feasibility.

As a condition to confirmation, the Bankruptcy Code generally requires that confirmation is not likely to be followed by the liquidation of the Debtor or the need for further financial reorganization. This requirement is generally referred to as the feasibility test of § 1129(a)(11) of the Bankruptcy Code. The Debtor submits that the Plan is feasible and otherwise complies with § 1 129(a)(11) of the Bankruptcy Code.

Attached hereto as Exhibit "C" is a projected cash flow statement (the "Projections") for the Reorganized Debtor for the period from January 1, 2014 through December 31, 2014. The Debtor also incorporates in Exhibit "C" Debtor's 5 year Projections that are based on the Debtor's historical financial information regarding income, expenses, and anticipated rental rates, and future operating expenses.

Based upon the Projections, the Reorganized Debtor will have sufficient cash on hand to make the required distributions on and shortly after the Effective Date. Meanwhile, the Projections demonstrate that the Reorganized Debtor will generate sufficient funds from its ongoing operations to make the required payments on account of the Allowed Class 1 through 3 Claims as they become due and also provide a sufficient collateral base for the Secured BankFinancial, F.S.B Claims and to pay the claims of the IRS.

Please note that the Projections were prepared by the Debtor's Attorney in cooperation with Debtor's management. The Projections were not prepared to comply with the guidelines for prospective financial statements published by the American Institute of Certified Public Accountants. Though presented with numerical specificity, the Projections are necessarily based on a variety of estimates and assumptions which, though considered reasonable by the Debtor, may not be realized and are inherently subject to significant business, economic, competitive, industry, market, and financial uncertainties and contingencies, many of which are beyond the Debtor's control. The Debtor cautions you that no representations can be made or are made as to the accuracy of the Projections or to the Reorganized Debtor's ability to achieve the projected results reflected in the Projections. Consequently, the Projections may not be relied upon as a guaranty or other assurance of the actual results that will occur. In deciding whether to vote to accept or reject the Plan, Holders of Claims or Interests must make their own determinations as to the reliability of the Projections and the reasonableness of its underlying assumptions. The Debtor does not intend and undertakes no obligation to update or otherwise revise the Projections to reflect events or circumstances arising hereafter.

D.      Acceptance.

As another condition to confirmation, the Bankruptcy Code requires that each impaired class of Claims or Interests accept the Plan. The Bankruptcy Code defines acceptance of the Plan by a class of Claims as acceptance by the holders of two-thirds in amount and a majority in the

number of Claims in that class. For a class of Interests, acceptance is defined as acceptances by the holders of two-thirds in amount. For both purposes only those who actually vote to accept or reject the Plan are counted.

### TAX CONSEQUENCES

A detailed discussion of the federal and state income tax consequences of the Plan is not practicable under the circumstances of these cases, and the Debtor expresses no opinion thereon. Because the income tax consequences of the Plan may be different for different parties, each party is urged to seek advice from its own tax advisor with respect to the income tax consequences of the Plan. The Debtor believes, however, that there will be no adverse tax consequences to the Estate as a result of the Plan's consummation, and that the Estate has sufficient tax attributes to prevent any negative tax implications resulting from the Plan's consummation.

### ADDITIONAL INFORMATION

The Bankruptcy Court will hold a hearing on confirmation of the Plan commencing on _____, 2015 at __:00 ___.m. (Central time). Any objections to confirmation of the Plan must be in writing and must be filed with the Bankruptcy Court on or before _____, 2015. Objections must be served at the same time upon counsels for the Debtor:

| | |
|---|---|
| James L. Hardemon | |
| Legal Remedies Chartered | William E. Jamison, Jr. |
| 8527 Stony Island Avenue | 200 East Randolph |
| Chicago, IL  60617 | Suite 5100 |
| (773) 374-5288 | Chicago, IL 60601 |
| Atty #1126229 | (312) 226-8500 |

### CONCLUSION

The Debtor believes the Plan is feasible and in the best interests of the Debtor's creditors. Accordingly, the Debtor asks that you vote to accept the Plan. A ballot for acceptance or rejection of the Plan is enclosed. Your vote is important.

February 2, 2015                                     Respectfully submitted,

                                                     Ada L. Brown


                                                     By: /s/ James L. Hardemon
                                                     One of the Attorneys for Debtor